# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1921

_____

United Fire & Casualty Company,    \*
    \*
         Appellee,    \*
    \*
    v.    \*
    \*
Eddie Gravette; Eddie Gravette, doing    \*
business as Southwest Sanitation,    \*
    \*
         Defendants.    \*    Appeal from the United States
    \*    District Court for the
Douglas DeMerritt; Tyler Dale    \*    Western District of Missouri
DeMerritt; Mirah Dawn DeMerritt,    \*
minors, Sherrie Ellen Barnett,    \*
    \*
         Defendants-Appellants.    \*
    \*
Geraldine DeMerritt; Southwest City,    \*
Mo., a municipality,    \*
    \*
         Defendants.    \*

_____

Submitted: November 18, 1998

Filed: July 2, 1999

_____

_____

Before McMILLIAN, WOLLMAN[1] and HANSEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Appellants, the survivors of Douglas DeMerritt, appeal from a final order entered in the United States District Court[2] for the Western District of Missouri granting summary judgment in favor of appellee, United Fire & Casualty Co. (United Fire) on its declaratory judgment action. United Fire & Casualty Co. v. Gravette, No. 97-5039-CV-SW-3 (W.D. Mo. Mar. 4, 1998). The district court found that the policy was not ambiguous and that coverage was excluded by the employee exclusion. See slip op. at 3. For reversal, appellants argue that the district court erred in finding that none of the exceptions to the employee exclusion applied and that the policy covered Joyce Gravette but not Eddie Gravette. For the reasons discussed below, we affirm the order of the district court.

## JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1332(a) (diversity of citizenship). The notice of appeal was timely filed under Fed. R. App. P. 4(a), and this court has appellate jurisdiction under 28 U.S.C. § 1291.

_____

[1]The Honorable Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit On April 24, 1999.

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

FACTS

On June 5, 1995, Eddie Gravette, who had a contract with Southwest City for trash pickup, and Douglas DeMerritt were picking up residential trash in Southwest City, Missouri. DeMerritt was employed as a pick-up man by Eddie Gravette's unincorporated business, Southwest Sanitation. Eddie Gravette was driving the garbage truck and accidentally ran over DeMerritt, fatally injuring him.

In December 1995, appellants filed a wrongful death action in state court against Eddie Gravette, Eddie & Joyce Gravette doing business as Southwest Sanitation, and the city of Southwest City. Joyce Gravette is Eddie Gravette's mother. Appellants claimed that Eddie Gravette was not the sole owner of Southwest Sanitation and instead was doing business with his mother, Joyce Gravette. They alleged that Eddie Gravette had been negligent in the operation of the garbage truck. They later amended their petition to add a negligence claim against the city of Southwest City, alleging vicarious liability for the negligence of Eddie Gravette.

United Fire is an insurance company incorporated in Iowa. It issued a commercial automobile liability policy to Eddie and Joyce Gravette doing business as Southwest Sanitation, effective from October 15, 1994, through October 15, 1995. The policy provided in part that United Fire will pay damages for injuries incurred as a result of an accident "resulting from the ownership, maintenance or use of a covered" motor vehicle. Section B(4) of the policy provided that coverage will not apply to any bodily injuries suffered by employees arising out of and in the course of their employment. That section further provided that the exclusion will not apply to domestic employees or liability assumed by the insured under an "insured contract." The policy does not define the term "domestic employee." The policy does define the term "insured contract" to include the term "sidetrack agreement," but does not further define "sidetrack agreement." The policy also defined "insured contract" to include

-3-

[t]hat part of any contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

United Fire believed that appellants' claim against Eddie Gravette fell squarely within the employee exclusion because it was undisputed that at the time of the accident DeMerritt was an employee of Southwest Sanitation and sustained his fatal injuries in the course of his employment. However, United Fire believed that Joyce Gravette was in a different position. According to the policy declaration, Eddie and Joyce Gravette were partners in Southwest Sanitation. Appellants also described Eddie and Joyce Gravette in their wrongful death complaint as doing business together as Southwest Sanitation. However, Eddie Gravette in his answer denied that Joyce Gravette was doing business with him as Southwest Sanitation and stated that he was the sole owner and operator of Southwest Sanitation. The garbage truck was owned by Joyce Gravette.

United Fire investigated the underlying facts and decided that DeMerritt was employed by Southwest Sanitation and Eddie Gravette but not by Joyce Gravette. Thus, United Fire decided that the employee exclusion would not apply to Joyce Gravette and agreed to defend Joyce Gravette without a reservation of rights. United Fire also offered to defend Eddie Gravette with a reservation of rights; however, Eddie Gravette refused the offer.

Subsequently, appellants voluntarily dismissed Joyce Gravette without prejudice from their wrongful death action in state court. Eddie Gravette agreed to arbitration of the wrongful death action. One of the issues to be determined was the nature of the business relationship, if any, between Eddie and Joyce Gravette. However, neither

Joyce Gravette nor Southwest City agreed to arbitration and neither participated nor presented any evidence in the arbitration proceeding. The arbitrator found in favor of appellants and against Eddie Gravette doing business as Southwest Sanitation and awarded appellants damages in the amount of $631,881.45. The arbitrator also found that Joyce Gravette was engaged in a partnership or joint venture or both with Eddie Gravette in the operation of Southwest Sanitation. In October 1997 the state court affirmed the award of the arbitrator and entered judgment against Eddie Gravette doing business as Southwest Sanitation. No judgment was entered against Joyce Gravette because she was no longer a party to the wrongful death action.

In April 1997 United Fire filed this action for declaratory judgment against appellants, Eddie Gravette, Eddie Gravette doing business as Southwest Sanitation, and the city of Southwest City, to determine whether the policy covered Eddie Gravette and moved for summary judgment. Appellants and Eddie Gravette asserted that Joyce Gravette was the partner of Eddie Gravette. Appellants filed a motion for summary judgment, contending Eddie Gravette was covered either under the policy or because his partner, Joyce Gravette, was covered because United Fire had agreed to defend her without a reservation of rights in the wrongful death action in state court.

The district court decided that although Joyce Gravette was not an indispensable party in the declaratory judgment action, it would not decide whether the policy covered Eddie Gravette without also deciding whether the policy covered Joyce Gravette and required United Fire either to add Joyce Gravette to the declaratory judgment action or file an unconditional declaration that Joyce Gravette would receive a defense and coverage. Thereafter, United Fire, in compliance with the district court's order, filed an amended declaration stating that it would provide both a defense and coverage for Joyce Gravette for the wrongful death claim.

The district court granted summary judgment in favor of United Fire and denied appellants' motion for summary judgment. The district court found that the policy was

not ambiguous and that coverage was excluded by the employee exclusion because it was not disputed that DeMerritt was an employee of Eddie Gravette at the time of the accident and that the accident occurred during and in the scope of that employment. See slip op. at 3.  The district court rejected appellants' argument that three possible exceptions to the employee exclusion applied: "domestic employee," "sidetrack agreement," or "insured contract."  Appellants argued that the term "domestic employee" was ambiguous, the policy did not define the term "domestic employee," and that  DeMerritt may have been a "domestic employee," and thus not excluded from coverage, because he was neither an alien nor a foreign national.  The district court found that appellants' interpretation of the term "domestic employee" was not reasonable and therefore not ambiguous.  See id. at 4-5.  The district court further found that the word "domestic" reasonably referred to the type of employment, that is, one who performs services of a household nature in or about a private home, and not the employee's nationality.  See id. at 5.

Next, the district court rejected appellants' argument that the contract between Southwest Sanitation and Southwest City was a "sidetrack agreement" within the meaning of the insured contract exception.  The district court found that the term "sidetrack agreement" was not ambiguous and was a term of art within the railroad industry, referring to a contract governing the "construction, maintenance, use and removal of certain spur lines and sidings."  The trash hauling contract had nothing to do with railroads or spur lines.  See id. at 5-6.

Finally, the district court rejected appellants' argument that the trash hauling contract was an "insured contract" because the policy definition of "insured contract" included indemnification agreements.  The trash hauling contract required Eddie Gravette to have public liability insurance and property damage insurance. The district court found that the trash hauling contract was not an "insured contract" because the contract was not an indemnification agreement.  See id. at 6.  Southwest City and Eddie Gravette agreed in the trash hauling contract that Eddie Gravette would obtain

insurance, but Eddie Gravette did not agree to indemnify Southwest City.  See id. at 6-7.  In sum, the district court found that none of the exceptions to the employee exclusion applied and that United Fire was entitled to judgment as a matter of law. This appeal followed.

In the meantime, in the fall of 1997, appellants filed a second action in state court against United Fire  based upon the state court judgment confirming the arbitration award in the wrongful death action and against Joyce Gravette on the ground that, as the partner of Eddie Gravette doing business as Southwest Sanitation, she was jointly and severally liable for the state court judgment against Eddie Gravette doing business as Southwest Sanitation.  The state court stayed the proceedings against United Fire pending this appeal.  However, in May 1998 the state court dismissed the claim against Joyce Gravette with prejudice.  The state court found that Joyce Gravette had been dismissed without prejudice from the wrongful death action, had not been a party to either the arbitration proceedings or the state court judgment, and was therefore not bound by that judgment.

DISCUSSION

This court reviews *de novo* the grant of summary judgment, applying the same standard used by the district court.  Thelma D. by Delores A. v. Board of Education, 934 F.2d 929, 932 (8th Cir. 1991).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue at to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the burden of identifying the evidence that it believes demonstrates the absence of a genuine issue of material fact, and the facts need to be taken in favor of the non-moving party.

For reversal, appellants argue that the district court erred in finding that the terms of the exceptions were not ambiguous. We reject appellants' attempt to inject ambiguity into a plainly worded contract. "The interpretation of a contract is a question of law for the court to decide." White Consolidated Industries, Inc. v. McGill Manufacturing Co., 165 F.3d 1185, 1190 (8th Cir. 1999). "Language is ambiguous if it is reasonably open to different constructions; and language used will be viewed in light of 'the meaning that would ordinarily be understood by the lay[person] who bought and paid for the policy.'" Robin v. Blue Cross Hospital Service, Inc., 637 S.W.2d 695, 698 (Mo. 1982) (en banc) (citation omitted). This is an objective, not subjective, test, and the subjective understanding of a particular insured is not controlling. See Shearson/American Express, Inc. v. First Continental Bank & Trust Co., 579 F. Supp. 1305, 1310 (W.D. Mo. 1984).

Domestic Employee

Appellants first argue that the policy did not define the term "domestic employee" and the term could have referred to someone who was an alien or foreign national. We agree with the district court that appellants' argument is creative but failed to demonstrate any ambiguity. A "domestic employee" is commonly understood to be a household servant. The dictionary defines the adjective "domestic" as "belonging to the house or home; pertaining to one's place of residence and to the family; as, domestic life, domestic duties." Webster's New 20th Century Dictionary 543 (2d ed. 1979). The primary definition of "domestic" as a noun is "a domestic worker; maid, cook, butler, etc." Id.

Missouri decisions also indicate that a "domestic employee" is a household servant. See Piepmeyer v. Johnson, 452 S.W.2d 97, 98 (Mo. 1970) (domestic employee "employed as a housekeeper and companion"); Shelter General Insurance Co. v. Siegler, 945 S.W.2d 24, 25 (Mo. Ct. App. 1997) (flash fire damaged household and caused personal injuries to homeowners' domestic employee); Watson v. Warren,

751 S.W.2d 406, 409 (Mo. Ct. App. 1988) (decedent made social security payments for domestic employees because she "refused to stay alone and paid companion to live with her").

Furthermore, a similar term is used in the Missouri Motor Vehicle Financial Responsibility Law (MVFRL). See Mo. Rev. Stat. § 303.190.5(1994) ("Such motor vehicle liability policy need not insure . . . any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured . . . ."). The policy exclusion is a paraphrase of the MVFRL: While automobile insurers neither intended nor are required to be workers' compensation insurers, liability insurance is to be provided to classes of employees who traditionally have not been covered by the workers' compensation system. Historically, household servants have not been included in the workers' compensation system. Mo. Rev. Stat. § 287.090.1(1) (1992) (workers' compensation insurance shall not apply to "domestic servants in a private home"). In Northland Insurance Co. v. Bess, 869 S.W.2d 157 (Mo. Ct. App. 1993), the insurance policy contained a similar employee exclusion and an exception for "domestic employees not entitled to workers' compensation benefits." The employer and the employee's family argued that the employee exclusion violated the MVFRL. The court disagreed, holding that the MVFRL did not require coverage in all situations and that the employee exclusion did not violate the public policy embodied in the MVFRL. See id. at 158-59. The court interpreted the term "domestic" as used in the MVFRL and the policy to refer to the type of employment by comparing employees covered by the workers' compensation law with domestic employees. See id.

Finally, cases in other jurisdictions support the conclusion that DeMerritt was not a domestic employee. See Richoux v. Callais & Sons, Inc., Civ. A. No. 85-4161, 1987 WL 10457, at *3 (E.D. La. May 6, 1987) (holding "the term 'domestic employee' is unambiguous and carries its generally accepted meaning of one who performs services of a household nature in or about a private home"); Spain v. Travelers

Insurance Co., 332 So. 2d 827, 829-30 (La. 1976) (similar domestic employee exclusion is not ambiguous).

The widely accepted, common understanding of the term "domestic employee" as referring to a household servant is the reasonable construction of the term and has nothing to do with the employee's nationality as suggested by appellants. Therefore, we hold the term "domestic employee" is not ambiguous and refers to the type of employment and not the employee's nationality. DeMerritt was not a "domestic employee" within the meaning of the exception to the employee exclusion.

Insured Contract

Next, appellants argue that the "insured contract" exception was ambiguous. This argument is misplaced.

In the wrongful death action against Eddie Gravette, appellants alleged in both their original and amended petitions that Eddie Gravette was negligent in the operation of the garbage truck. The arbitration award found Eddie Gravette was negligent and that award was affirmed by the state court. Thus, the state court judgment against Eddie Gravette was based on negligence, not contract. For this reason, the "insured contract" exception to the employee exclusion simply does not fit the facts of the present case. Appellants also argue that the trash hauling contract should be considered an "insured contract" because the definition of the term in policy included agreements to indemnify third parties. The trash hauling contract required Eddie Gravette to obtain public liability insurance and property damage insurance. Obviously, this is not an indemnification agreement and appellants seem to concede this point. However, they argue that the city included this requirement because the city did not want to be exposed to vicarious liability for any negligence on the part of Eddie Gravette doing business as Southwest Sanitation. The flaw in this argument is that the trash hauling contract just did not contain an indemnification agreement. The trash hauling contract

only required Eddie Gravette to obtain insurance; it did not require Eddie Gravette to in any way indemnify the city.

Sidetrack Agreement

Appellants also argue that the term "sidetrack agreement" is not defined in the policy and is ambiguous. Appellants argue that this ambiguity requires giving them the benefit of the doubt in favor of coverage and that the trash hauling contract is, or at minimum might be, a "sidetrack agreement."

The policy, in its definition section, provides several examples of an "insured contract." One of them is a "sidetrack agreement." The term "sidetrack agreement" is not further defined in the policy. The dictionary definition of "sidetrack" refers to a railroad track or siding:

> **Sidetrack,** <u>n.</u>; a track at the side of the main line; a railroad siding.
>
> **Sidetrack,** <u>v.t.</u>; sidetracked (-trackt), <u>pt.</u>, <u>pp.</u>; sidetracking, <u>ppr.</u> 1. to shunt, to shift, as a train, from the main line to a siding. 2. to divert from the main course or issue; as, he <u>sidetracked</u> the measure in the Senate.
>
> **Sidetrack,** <u>v.i.</u> 1. to shift a train to a siding. 2. to turn away from the main course or issue.

Webster's New 20th Century Dictionary 1686 (2d ed. 1979).

Thus, the common understanding of "sidetrack agreement" would be an agreement regarding a railroad track or siding. Here, the trash hauling contract had nothing to do with railroads. It was not a "sidetrack agreement" and therefore was not an "insured contract" under the policy. See Mount Vernon Fire Insurance Co. v.

<u>William Monier Construction Co.</u>, No. 95 CIV-0645, 1996 WL 44774, at 4 & n.3 (S.D.N.Y. Aug. 7, 1996).

<u>Coverage</u>

Finally, appellants argue that the district court erred in allowing United Fire to deny coverage for Eddie Gravette but to admit coverage for Joyce Gravette without becoming obligated to furnish coverage for all of the named insureds. The policy named as insureds Eddie and Joyce Gravette doing business as Southwest Sanitation and described the business as a partnership. Appellants argue that coverage for Eddie Gravette was created because United Fire provided a defense and coverage for his mother, Joyce Gravette.

Under Missouri law, "[t]he duty of a liability insurer to defend pursuant to its policy is determined by comparing the [policy] language . . . and the allegations of the petition in the action brought by the person injured or damaged." <u>Standard Artificial Limb, Inc. v. Allianz Insurance Co.</u>, 895 S.W. 2d 205, 210 (Mo. Ct. App. 1995). "However, a liability insurer's duty to defend does not depend alone upon the allegations of the petition filed against the insured." <u>Id.</u> "The insurer cannot ignore safely actual facts known to it or which could be known from reasonable investigation." <u>Id.</u> Thus, "an insurer has an obligation to look beyond the allegations made in the [petition] against its insured to facts known by the insurer or facts which can be discovered through a reasonable investigation," before declining to defend. <u>Columbia Union National Bank v. Hartford Accident & Indemnity Co.</u>, 669 F.2d 1210, 1215 (8th Cir. 1982).

Appellants' wrongful death complaint in state court named both Eddie Gravette and Joyce Gravette as defendants, and appellants alleged each was liable for personal injuries and death of DeMerritt. United Fire conducted an investigation and found that DeMerritt was the employee of Eddie Gravette, doing business as Southwest

Sanitation, and that DeMerritt died from injuries sustained in the scope of and in the course of his employment. Thus, appellants' complaint and United Fire's investigation indicated that the employee exclusion applied to the claim against Eddie Gravette, excluding insurance coverage for him.

The claim again Joyce Gravette, however, was an entirely different matter. Eddie Gravette, through his personal attorney, stated in his answer in state court that he was the sole owner of Southwest Sanitation, and that no one else, i.e., his mother, Joyce Gravette, was doing business with him. Similarly, Joyce Gravette consistently maintained that she was not the partner of her son, Eddie Gravette, which meant that she was not the employer of DeMerritt. United Fire's investigation indicated that Joyce Gravette was not a partner in Southwest Sanitation and was not the employer of DeMerritt. Thus, in the same wrongful death action, United Fire faced a situation in which one named insured (Eddie Gravette) fell squarely within the employee exclusion, while another named insured (Joyce Gravette) did not.

Under Missouri law, an insurer can provide a defense to a liability insured and reserve its right to later deny coverage, if the insurer provides adequate notice to the insured and the insured accepts the defense of the action without protest and with full knowledge that the insurer maintains the right to assert the coverage defense. See Atlanta Casualty Co. v. Stephens, 825 S.W.2d 330, 333 (Mo. Ct. App. 1992). However, under Missouri law, an insurer cannot force an insured to accept a reservation of rights defense. See Ballmer v. Ballmer, 923 S.W.2d 365, 369 (Mo. Ct. App. 1996).

When an insured exercises the right to reject a defense with reservation of rights by the insurer, an insurer can proceed in one of only three ways: first, represent the insured without a reservation of rights; second, withdraw from representing the insured altogether; or, lastly, file a declaratory judgment action to determine the scope of the policy's coverage. See id. at 369. However, an insurer's decision to file a declaratory

-13-

judgment action, rather than to simply drop the reservation of rights and defend without any reservation, is treated as a refusal to defend the insured. See id. Further, if the insurer attempts to reserve coverage issues and the insured rejects the defense, the insurer has no right to insist upon controlling the defense, as is otherwise its right under the insurance policy. See Butters v. City of Independence, 513 S.W.2d 418, 425 (Mo. 1974). The insured would then be released from the policy prohibitions against incurring expenses and negotiating and settling claims on its own accord. If the underlying claim settled by the insured is in fact covered under the policy, and a settlement is made by the insured in good faith and is not collusive, the insurer would be obligated to pay the settlement. See id.

In the present case United Fire offered to defend Eddie Gravette with a reservation of rights. Eddie Gravette refused, and United Fire then filed a declaratory judgment action, which is the current action now on appeal.

Under Missouri law, United Fire had a difficult choice to make regarding the claim against Joyce Gravette. If United Fire denied coverage because Joyce Gravette was, in fact, the partner of Eddie Gravette, and thus the employer of DeMerritt, or if it offered a defense under a reservation of rights that would likely be refused by Joyce Gravette, or if it sought a declaratory judgment on the issue of coverage for Joyce Gravette, United Fire faced the possibility that Joyce Gravette would simply "give up," regardless of the merits of her case, and concede liability to appellants, who would then garnish the insurance policy. In such a garnishment action, United Fire would be faced with a judgment against Joyce Gravette, a named insured, without a clearly applicable coverage exclusion.

More importantly, Joyce Gravette was a named insured, facing a liability claim that was not clearly excluded under the policy, and therefore, she should receive a defense. Under these circumstances applicable to Joyce Gravette, and different from those of Eddie Gravette, United Fire agreed to defend Joyce Gravette without

-14-

reservation of rights in the wrongful death action in state court. Thus, the different positions of United Fire regarding coverage for Eddie Gravette and Joyce Gravette, each a named insured, are the results of their very different circumstances, in the context of Missouri law governing the duty to defend and reservations of rights by an insurer.

"Missouri law regards insurance policies as contracts to which the rules of contract construction apply." Sargent Construction Co. v. State Auto Insurance Co., 23 F.3d 1324, 1326 (8th Cir. 1994). "If the policy is not ambiguous, the court cannot construe it, but must enforce the express terms of the policy as it is written." Id. n.2. Because contract law applies to an insurance policy, "any claim or suit by either party must be based upon the policy issued." Gabriel v. Shelter Mutual Insurance Co., 897 S.W.2d 119, 120 (Mo. Ct. App. 1995). Here, the district court properly looked within the four corners of the insurance policy to determine whether United Fire owed coverage to Eddie Gravette. United Fire's decision to provide coverage for Joyce Gravette has no bearing upon whether the terms of the policy obligated United Fire to provide coverage for Eddie Gravette. No policy provision tied coverage for Eddie Gravette to coverage for Joyce Gravette. In fact, the policy specifically included a severability clause that separated coverage for each insured: "[e]xcept with respect to the limits of insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or a suit is brought." Such a severability clause means that "when applying the coverage to any particular insured the term 'insured' is deemed to refer only to the insured who is claiming coverage under the policy with respect to the claim then under consideration." Baker v. DePew, 860 S.W.2d 318, 320 (Mo. 1993) (en banc). Accordingly, the severability clause required the issue of coverage for Eddie Gravette to be addressed separately from coverage for Joyce Gravette.

Appellants argue that United Fire waived its rights or should be estopped from asserting its right to deny coverage for Eddie Gravette because, as discussed above, it

provided a defense and coverage for Joyce Gravette.  We note, however, that neither waiver nor estoppel is available to bring risks within the coverage of an insurance policy that are not covered by its terms or that are excluded from the policy.  See Koch Engineering Co. v. Gibraltar Casualty Co., 878 F. Supp. 1286, 1289 (E.D. Mo. 1995), aff'd, 78 F.3d 1291 (8th Cir. 1996);  Holland Corp. v. Maryland Casualty Co., 775 S.W.2d 531, 534-35 (Mo. Ct. App. 1989); Macalco, Inc. v. Gulf Insurance Co., 550 S.W.2d 883, 891 (Mo. Ct. App. 1977).  "[N]either the doctrines of waiver nor estoppel may be used to create a new contract for the parties."  Holland Corp. v. Maryland Casualty Co., 775 S.W.2d at 535.   No estoppel exists on the facts of this case.  Here, appellants offer no argument, and the record contains no evidence, that Eddie Gravette detrimentally relied on or was prejudiced by United Fire's denial of coverage, because, as discussed above,  Eddie Gravette never had coverage under the policy on appellants' wrongful death claim against him.

United Fire's decision to provide coverage for Joyce Gravette improved appellants' position by giving them the ability to reach the proceeds of the policy, regardless of the employee exclusion, if they successfully litigated the merits of Joyce Gravette's alleged wrongful death liability.  However, appellants have never sought a trial on the merits of Joyce Gravette's alleged liability for the wrongful death of DeMerritt.  The record shows that appellants voluntarily dismissed Joyce Gravette in the wrongful death action and proceeded with an arbitration proceeding that could never be binding upon Joyce, because she was not a party to the case.  Later, appellants sued Joyce Gravette in state court based on the judgment affirming the arbitration award. Appellants argued that Joyce Gravette was bound by the judgment, even though she had been voluntarily dismissed and she was no longer a party at the time of the arbitration and the judgment.  The state court dismissed appellants' second lawsuit against Joyce Gravette with prejudice.  See Barnett v. United Fire & Casualty Co., No. CV397-490CC (Mo. Cir. Ct. Lawrence County May 11, 1998) (judgment of dismissal with prejudice), aff'd, No. 22358  (Mo. Ct. App. Apr. 16, 1999).

-16-

Finally, appellants argue that Joyce Gravette's status as a "partner" of Eddie Gravette created coverage for Eddie Gravette, despite the terms of the policy. However, no judgment binding upon Joyce Gravette found that she was a partner of Eddie Gravette. Even assuming for purposes of analysis that Joyce Gravette and Eddie Gravette were partners and that the declaration pages of the policy that referred to them as partners were binding, Joyce Gravette would have been the employer of DeMerritt. The employee exclusion would apply, resulting in neither Eddie nor Joyce Gravette being covered under the policy.

We hold that the district court correctly granted summary judgment in favor of United Fire. None of the exceptions to the employee exclusion applied and coverage for Eddie Gravette was excluded by the employee exclusion. Accordingly, the judgment is affirmed.


A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-17-